UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCY MESA, Conservator of the Person and Estate of TOMMY LEO JOHNSON, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN GENERAL LIFE INSURANCE COMPANY, a Texas corporation; et al., <br><br> Defendants. | No. 1:19-cv-01393-DAD-EPG <br><br><br> ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE <br><br> (Doc. Nos. 4, 7) |

This matter is before the court on a motion to remand filed by plaintiff Lucy Mesa and a motion to dismiss filed by defendant American General Life Insurance Company ("AGL").[1]  On December 17, 2019, the motions came before the court for hearing. Attorney Joseph Patrick Sullivan appeared telephonically on behalf of plaintiff, and attorney Emily K. Liu appeared on behalf of defendant. The court has considered the parties' arguments and, for the reasons set forth below, will deny the motion to remand and grant the motion to dismiss.

/////

---

[1] Plaintiff has also named AIG Annuity Insurance Company and Western National Life Insurance Company as defendants. However, both companies were succeeded by AGL and no longer exist as separate corporate entities. Accordingly, the court will refer only to AGL in this order. (Doc. No. 4 at 2, n.1.)

1

**BACKGROUND**

Tommy Leo Johnson (the "Conservatee"), on whose behalf plaintiff Lucy Mesa is litigating this action, was born on September 8, 1976 with "severe and irreversible physical injury and mental impairment[.]" (Doc. No. 1-2 ("Compl.") at ¶ 7.) Those injuries were the basis of a lawsuit that the Conservatee, through a guardian *ad litem*, filed in Tulare County Superior Court on September 13, 1977. (*Id.* at ¶ 8.) That case was settled, and the resulting Minor's Compromise (the "Original Compromise") was approved by the court on February 20, 1981. (*See* Doc. No. 1-2, Exs. B, C.) The Original Compromise provided, in relevant part, that:

> B. The defendants will arrange for the following payments to be made to Lucy Mesa and Tony Mesa as the general guardians of Tommy Leo Johnson, a minor:
>
> 1) A monthly payment of $250.00 commencing April 1, 1981, and continuing to age 12;
>
> 2) A monthly payment of $500.00, age 12 to age 18;
>
> 3) A monthly payment of $1,000.00, age 18 to age 23;
>
> 4) A monthly payment of $2,500.00, commencing at age 23 and continuing for life with an annual three per cent compound increase in payments.
>
> C. A lump sum payment of $26,000.00 on April 1, 1991.
>
> D. The unconditional payment of a death benefit in the sum of $50,000.00 to Lucy Mesa and Tony Mesa, or the survivor of them, or in the event that both shall predecease Tommy Leo Johnson, then to his estate.

(*Id.*) These payments were funded by an annuity purchased from AGL, issued as Annuity No. 191096 and effective March 1, 1981 (the "Original Annuity"). (Compl. at ¶¶ 11–13; Doc. Nos. 4-1 at 7; 4-2, Ex. 1.)

On October 9, 1984, plaintiff Lucy Mesa, along with Tony Mesa, filed an *ex parte* petition with the Tulare County Superior Court requesting leave to renegotiate the Compromise "so as to not increase the total amount ultimately to be paid . . . or to increase the cost of the annuity . . . but to alter the timing of the payments to give [Plaintiff and the Conservatee] relief at this time when [the Conservatee's] needs are great and the payments from the settlement are insufficient to meet those needs." (Doc. No. 4-1 at 8, Ex. 2 at 3–4.) The parties negotiated and submitted to the

state court a new payment schedule (the "Amended Compromise") on May 22, 1985, which was approved on May 23, 1985. (Compl., Ex. D at 4; Doc. No. 4-4, Ex. 3.) The Amended Compromise provided, in relevant part, that:

> [C]ommencing June 1, 1985, in lieu of the payment schedule set forth in [the Original Compromise], the payments on behalf of defendants to plaintiff minor ward herein, shall be as follows:
>
> A. $1,000 per month, said payments to increase 3% annually compounded on June 1, 1986 and each year thereafter,
>
> B. Lump sum payments of $26,000 on March 1, 1991 and $50,000 on the death of the minor ward, to be paid to petitioners herein[.]

(*Id.*) A restructured annuity (the "Amended Annuity") was then issued, mirroring the payment scheduled laid out by the Amended Compromise. (Doc. Nos. 1-1 at 40; 4-4, Exs. 3–4.)

Plaintiff now contends that defendant breached the parties' contract when it failed to start paying her a monthly payment of $2,500, compounded annually thereafter at a rate of 3%, in October 1999, the month following the Conservatee's twenty-third birthday. (Compl. at ¶¶ 17–18.) This action, originally filed on August 28, 2019 in Tulare County Superior Court, alleges causes of action for: 1) breach of contract, 2) declaratory relief, 3) fraud, and 4) dependent adult abuse. (*Id.* at ¶¶ 1–35.)

Defendants removed the case to this federal court on October 3, 2019 on the basis of diversity jurisdiction and moved to dismiss the complaint on October 10, 2019. (Doc. Nos. 1, 4.) Plaintiff filed opposition to that motion on November 12, 2019, and defendants replied on December 6, 2019. (Doc. Nos. 14, 17.) Separately, plaintiff moved to remand the action to state court on October 18, 2019 and defendants filed their opposition to that motion on December 3, 2019. (Doc. Nos. 7, 16.)

**LEGAL STANDARDS**

**A.   Motion to Remand**

A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). Removal is proper when a case originally filed in state court presents a federal question, or where there is diversity of citizenship

among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332(a). But § 1447(c) of Title 28 of the United States Code provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (citation omitted); *see also Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009) ("The defendant bears the burden of establishing that removal is proper."). If there is any doubt as to the right of removal, a federal court must reject jurisdiction and remand the case to state court. *See Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

**B.    Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a

4

formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## LEGAL ANALYSIS

**A.  Request for Judicial Notice**

Plaintiff first requests that the court take judicial notice of: 1) the Statement and Designation by Foreign Corporation filed by defendant with the California Secretary of State on December 31, 1991 (the "1991 Registration Statement"); 2) LexisNexis SmartLinx Comprehensive Business search results for "american general life insurance company"; and 3) YellowPages.com search results for "american general life insurance company." (*See* Doc. No. 7-2; 7-3.)

Pursuant to Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Public records are properly the subject of judicial notice because the contents of such documents contain facts that are not subject to reasonable dispute, and the facts therein "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.*; *see also Intri-Plex Techs. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

The court will therefore take judicial notice of AGL's 1991 Registration Statement, which is a public filing with the California Secretary of State. *See Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1152 (E.D. Cal. 2017) (taking judicial notice of filings with the California Secretary of State); *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 937 (C.D. Cal. 2011) (same).

/////

The court, however, declines to take judicial notice of the LexisNexis and YellowPages.com search results. Plaintiff has failed to demonstrate that LexisNexis and YellowPages.com's business search services are "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Plaintiff has also provided no authority in support of the proposition that the court can take judicial notice of online search results for business information from private databases and business directors such as LexisNexis and YellowPages.com.

**B.     Motion to Remand**

Plaintiff contends that this case must be remanded to state court because defendant AGL, like plaintiff, is a citizen of California thereby destroying complete diversity. (Doc. No. 7 at 2–3.) Although plaintiff recognizes that defendant is incorporated and headquartered in Texas, she urges the court to apply the "place of operations" test to find that defendant is a citizen of California because it has a principal office in Sacramento, conducts business and employs people in California, and pays California state taxes. (*Id.* at 3.) In support of her motion to remand, plaintiff provides a California foreign corporation registration statement filed by defendant in 1991 and the LexisNexis and YellowPages.com listings for various AGL offices in California. (Doc. No. 7-3 at Ex. A.) Defendant argues that the court must apply the "nerve center" test, and that the test yields only one conclusion: that AGL has only one principal place of business and that it is at its headquarters in Houston, Texas. (Doc. No. 16 at 4–5.)

A federal court can only exercise diversity jurisdiction where there is complete diversity of citizenship—the presence "of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 679 (9th Cir. 2006) (citations omitted). For purposes of diversity jurisdiction, a natural person is a citizen of the state in which she is domiciled, which is presumptively the state of her residence. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983); *accord Naegele v. Tonius*, 320 Fed. App'x. 550, 551 (9th Cir. 2009).[2] A corporation, including one incorporated in a foreign country, is a citizen of its place of

---

[2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

6

incorporation *and* its principal place of business. 28 U.S.C. § 1332(c)(1); *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990 (9th Cir. 1994).

Although circuit courts were previously divided as to how to locate a corporation's "principal place of business," the Supreme Court resolved the circuit split in *Hertz Corp. v. Friend*, conclusively holding that a corporation's "principal place of business" is

> where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.,* the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

559 U.S. 77, 91–93 (2010) (eliminating the "place of operations" test and adopting the "nerve center" test). This nerve center exists in only one place. *Id.* at 93.

Here, AGL has produced recent filings with the State of California and a declaration from Julie Cotton Hearne, AGL's corporate secretary, which show that AGL is incorporated and headquartered in the State of Texas and that its CEO, Secretary, and CFO work out of its Texas headquarters. (Doc. Nos. 16-1, Ex. 1, Hearne Decl. at ¶ 2; 16-2, Ex. 2.) The Hearne Declaration elaborates:

> A substantial amount of American General's executive functions, production activities, and corporate operations occur at its headquarters in Houston, Texas. Houston, Texas is the center of direction, control, and coordination by AGL[]'s high-level officers. AGL[] is not, and never has been, incorporated under the laws of California and does not maintain its principal place of business or headquarters in California.

(Hearne Decl. at ¶ 2.)

In contrast, plaintiff has produced only: (1) an 18-year old filing with the California Secretary of State that includes the address of AGL's principal office in California; and (2) search results from two third-party commercial databases that list the addresses of various AGL offices located in California, though with no explanation as to the function of these offices. (*See* Doc. No. 7-3. Exs. B, C.)

/////

Because a factual issue has been raised regarding the court's jurisdiction over this case, the court will review the applicable evidence proffered by the parties. *See, e.g.*, *Hertz*, 559 U.S. at 96–97 (holding that "[w]hen challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof" and noting, for example, that the Court would reject the "mere filing" of a form, such as an SEC 10-K that listed a company's "principal executive offices",[3] as insufficient to establish a corporation's nerve center) (citation omitted); *see also Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.").

Here, defendant's proffered evidence checks all the boxes of the "nerve center" test. *Hertz*, 559 U.S. at 91–93. That evidence shows that AGL is incorporated in Texas, its headquarters are in Houston, and its executive officers, such as its CEO and CFO, direct, control, and coordinate the company's operations out of its Houston headquarters. (*See* Hearne Decl.) Plaintiff's meager evidence, on the other hand, does not support her contention that AGL is a citizen of California. The 18-year old registration document that plaintiff relies on in moving to remand itself reflects that AGL maintains in headquarters in Texas. (Doc. No. 7-3, Ex. A.) And the LexisNexis and YellowPages.com results, even were the court to take judicial notice of them, show that plaintiff has done no more than half-heartedly search for the location of AGL offices, with no regard to whether these offices have any role in directing, controlling, or coordinating the company's functions. (Doc. No. 7-3. Exs. B, C.) At best, the offered documents show that AGL had, at various times and locations, offices in the State of California—neither document indicates what functions these offices serve. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, ___U.S.___, 139 S. Ct. 2615 (2019) ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.").

---

[3] In that example, the Court noted the distinction between a "principal executive office" in the tax lien context and a principal place of business in the jurisdictional context. *Hertz*, 559 U.S at 96–97.

Moreover, plaintiff urges this court to apply the "place of operations test," a test that was clearly abrogated by the Supreme Court in 2010.[4] *See Hertz*, 559 U.S. at 91–93 ("We conclude that "principal place of business . . . is the place that Courts of Appeals have called the corporations 'nerve center.'"). The court cannot do so.

Defendant has made the requisite showing in support of the court's exercise of diversity jurisdiction over this case. Accordingly, plaintiff's motion to remand will be denied.

**C.     Motion to Dismiss**

Defendant presents several arguments to support its motion to dismiss, including that each of plaintiff's claims is barred by the applicable statute of limitations or fails to state a claim. (Doc. No. 4-1 at 12.) Because the court can resolve the motion to dismiss on these grounds, it will not address defendant's remaining arguments.

1.     Plaintiff's Claims Are Barred in Part by the Statute of Limitations

Under California law, fraud claims are subject to a three-year statute of limitations, and breach of contract, declaratory judgment,[5] and dependent adult abuse claims are subject to a four-year statute of limitations. *See* Cal. Civ. Proc. Code §§ 337(a), 338(d); Cal. Welf. & Inst. Code § 15657.7. These statutes of limitations only begin to run when a plaintiff discovers, or should

---

[4] Plaintiff is reminded that Rule 11 of the Federal Rules of Civil Procedure provides that:

> By presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (2) the claims . . . and other **legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law**; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

(emphasis added).

[5] Plaintiff's declaratory judgment claim, which is predicated on an alleged breach of the terms of the Original and Amended Annuities, is subject to a breach of contract claim's four-year statute of limitation. *See Maguire v. Hibernia Sav. & Loan Soc.*, 23 Cal. 2d 719, 733–34 (1944) ("[I]f declaratory relief is sought with reference to an obligation which has been breached and the right to commence an action for 'coercive' relief upon the cause of action arising therefrom is barred by the statute, the right to declaratory relief is likewise barred.")

have discovered, the facts constituting the wrongful act.  *Id.*

Plaintiff contends that defendant should have initiated compounding monthly payments of $2,500.00 beginning in October 1999, the month following the Conservatee's twenty-third birthday.  (Compl. at ¶ 17.)  According to plaintiff, the Amended Compromise only modified the portion of the original payment schedule that applied to the Conservatee before he turned eighteen, effectively accelerating the payment schedule to make him eligible for compounding $1,000.00 monthly payments starting in June 1985, rather than October 1994.  (*Id.*)  Resting her argument on a provision in the order approving the Amended Compromise that states that "[e]xcept as modified herein[,] the earlier Orders in this matter are not affected . . . and shall remain in full force and effect," plaintiff argues that the Original Compromise should have governed the payments that began in October 1999.  (Doc. No. 1-2, Ex. E.)

Even assuming that plaintiff's mangled interpretation of the Amended Compromise were to be correct, plaintiff must have known of the facts underlying her claims by, at the very latest, October 1999, the date on which under the theory she now advances defendant was supposedly required to increase its payments to $2,500.00.  (*See* Compl. at ¶¶ 7, 16–18; Doc. No. 4-1 at 13–14.)  Plaintiff, however, did not file this action until August 28, 2019, nearly twenty years after she knew or should have known that defendant was supposedly underpaying her.  (*See* Compl. at 1.)  Plaintiff contends that this delay is excusable because she did not receive a copy of the Amended Annuity that was issued after the Amended Compromise was approved by the Tulare County Superior Court on May 23, 1985.  (Doc. No. 14 at 6.)  As a result, she claims, she did not discover the facts constituting the basis of her claims until August 22, 2018, when she consulted an attorney and was advised that she was being underpaid by defendant.  (*Id.*)  However, the provisions of the Amended Annuity mirror exactly the terms set forth in the Amended Compromise, which plaintiff herself petitioned for in a sworn and signed filing submitted with the Tulare County Superior Court on May 22, 1985 and were set out in a court order issued the next day, May 23, 1985.  (Doc. No. 4-4, Ex. 3.)  Plaintiff's claims of ignorance are thus meritless.

Plaintiff, however, argues that the court should:  1) apply a theory of continuous accrual and interpret the Amended Annuity as a series of severable contractual obligations; or 2) read the

10

Amended Annuity as an account stated, where the statute of limitations runs from the date of the last item of the account. (Doc. No. 14 at 7.)

The argument that the Amended Annuity is an account stated is plainly wrong. An account stated "exhibits the state of account between parties, and the balance owing from one to the other; and when assented to, either expressly or impliedly, it becomes a new contract. An action upon it is not founded upon the original items, but upon the balance agreed to by the parties." *See Coffee v. Williams*, 103 Cal. 550, 556 (1894). Plaintiff does not allege any facts in this action that would support an account stated action,[6] nor did she plead one in the first place.

Under a continuous accrual theory, "a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." *Blaser v. State Teachers' Ret. Sys.*, 37 Cal. App. 5th 349, 365 (2019), *as modified on denial of reh'g* (Aug. 6, 2019), *review denied* (Oct. 16, 2019) (citation omitted). California courts have applied this theory to "not only installment contracts, but also such diverse contractual arrangements as leases with periodic rental payments, and contracts calling for periodic, pension-like payments on an obligation with no fixed and final amount." *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1388 (2004) (citations omitted); *see also Conway v. Bughouse, Inc.*, 105 Cal. App. 3d 194, 196 (1980) (applying the theory to a contract that included monthly, lifetime payments); *Blaser*, 37 Cal. App. 5th 349 (finding that continuous accrual applies to state pension payments). Although it appears that courts have not yet analyzed this theory with regard to annuities, the undersigned concludes that the Amended Annuity[7] is analogous to the type of

---

[6] Even a cursory examination of the elements of an account stated action shows that plaintiff has not alleged sufficient facts to state such a claim. *See* Judicial Council of California Civil Jury Instruction 373 (requiring that the plaintiff prove, among other things, that the defendant owed plaintiff money from previous financial transactions, that both parties agreed that the amount stated in the account was the correct amount owed to plaintiff, and that defendant nonetheless has not paid plaintiff the amount owed).

[7] The Supreme Court has noted that annuities are "traditionally and customarily . . . fixed annuities, offering the annuitant specified and definite amounts beginning with a certain year of his or her life." *Sec. & Exch. Comm'n v. Variable Annuity Life Ins. Co. of Am.*, 359 U.S. 65, 69 (1959).

11

lifetime, pension-like payments that California courts analyze under the continuous accrual theory. *Id.*

Applying this theory to the Amended Annuity at issue here, the court concludes that plaintiff's fraud claims are only time-barred as to any events that occurred more than three years before plaintiff filed this case, and that his breach of contract, dependent adult abuse, and declaratory judgment claims are similarly only time-barred as to any events that occurred more than four years before plaintiff filed this case. *See* Cal. Civ. Proc. Code §§ 337(a), 338(d); Cal. Welf. & Inst. Code § 15657.7. Any claims that accrued before those respective dates will therefore be dismissed with prejudice as time-barred.

2. Plaintiff's Remaining Allegations Fail to State a Claim

The portion of plaintiff's complaint that is timely must nonetheless be dismissed for failure to state a claim. The court first analyzes plaintiff's breach of contract claim because defendant's alleged breach serves as the factual basis for all of plaintiff's other claims. (*See* Compl. at ¶¶ 1–35.)

In California, a breach of contract claim consists of: "(1) the existence of a contract, (2) performance or excuse for nonperformance, (3) defendant's breach, and (4) damages." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1147 (N.D. Cal. 2019) (citation omitted). Here, plaintiff has failed to allege a facially plausible breach of contract claim. Even construing the allegations of the complaint in the most favorable light possible for plaintiff, the terms of the Amended Annuity make it patently clear that plaintiff is specifically entitled only to "$1,000 per month, said payments to increase 3% annually compounded on June 1, 1986 *and each year thereafter*," in addition to certain lump sums. (Doc. Nos. 1-1 at 40; 4-4, Exs. 3–4) (emphasis added). Plaintiff's claim that she was entitled to monthly payments of $2,500 beginning in October 1999 is not plausibly supported by any term in the extant contract[8]—she points only to

---

[8] The language of the Amended Compromise and Amended Annuity is clear and unambiguous, especially considering plaintiff's previous representations to the Tulare County Superior Court. First, plaintiff's signed May 22, 1985 petition filed with that court requesting approval of the Amended Compromise stated that AGL would "be willing to amend the terms of the annuity to provide, instead of the payments set out [in the Original Compromise], the sum of $1,000 per month increased by 3% per annum compounded." (Doc. No. 4-4, Ex. 3.) Second, the May 23,

12

provisions in the Original Compromise that were clearly overridden by court order.  (*See* Compl., Ex. D at 4; Doc. No. 4-4, Ex. 3.)

Because "[r]esolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous," *Reyes v. Nationstar Mortg. LLC*, No. 15-CV-01109-LHK, 2015 WL 4554377, at *4 (N.D. Cal. July 28, 2015), plaintiff's breach of contract claim will be dismissed.  *See also In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 979 (N.D. Cal. 2016) (dismissing breach of contract claim for failure "to identify a relevant contractual provision that was breached"); *Abbit v. ING USA Annuity & Life Ins. Co.*, 999 F. Supp. 2d 1189, 1197 (S.D. Cal. 2014) (dismissing a breach of contract claim that was premised on an allegation plainly contradicted by the express terms of the contract).  Because amendment would be futile for the reasons set forth above, dismissal will be with prejudice.

Because plaintiff's other claims are predicated on and thus rise and fall with her breach of contract claim, they suffer the same fate.  *See, e.g.*, *Reyes*, 2015 WL 4554377, at *7 (dismissing declaratory relief claim because "where determination of a breach of contract claim will resolve any question regarding interpretation of the contract, there is no need for declaratory relief, and dismissal of a companion declaratory relief claim is appropriate") (citation omitted).

/////

/////

---

1985 court order approving the above petition directed that, "in lieu of the payment schedule set forth [in the order approving the Original Compromise], the payments [to the Conservatee] shall be . . . $1,000 per month, said payments to increase 3% annually compounded on June 1, 1986 and each year thereafter[.]"  (*Id.*)  Plaintiff's interpretation of the Amended Compromise and Amended Annuity is further contradicted by the language of her October 9, 1984 *ex parte* petition requesting leave to renegotiate the Original Compromise.  That petition asked the court to allow them to renegotiate a payment schedule that would "give them more funds now and somewhat less in the future," and they indicated that they sought a change not to "increase the total amount ultimately to be paid . . . or to increase the cost of the annuity, but to alter the timing of the payments to give [Plaintiff and the Conservatee] relief at this time when [the Conservatee's] needs are great and the payments from the settlement are insufficient to meet those needs."  (Doc. No. 4-1 at 8; 4-3, Ex. 2 at 3–4.)  The interpretation that plaintiff now advances contradicts her earlier representations to the Tulare County Superior Court, as it would dramatically increase the initial annuity payments (thus drawing down the annuity's underlying investment more quickly) without any corresponding reductions later in the term of the annuity.  These contradictions are clearly irreconcilable.

**CONCLUSION**

Accordingly:

1. Plaintiff's motion to remand (Doc. No. 7) is denied;
2. Defendant's motion to dismiss (Doc. No. 4) is granted with prejudice and without leave to amend;
3. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **January 22, 2020**

_____
UNITED STATES DISTRICT JUDGE